IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABF FREIGHT SYSTEMS, INC., THOMAS MILLS,<br><br>   Plaintiffs,<br>   v.<br><br>UNITED STATES OF AMERICA; SECURITY CONSULTANT'S GROUP, INC.; WEST BAY BUILDERS, INC.; and DALEY'S DRYWALL,<br><br>   Defendants.  / | No. C 10-05188 SI,<br>consolidated with 11-04663<br><br>**ORDER GRANTING FEDERAL DEFENDANT'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT** |

Currently before the Court is the motion by defendant United States of America ("USA") for determination of good faith settlement. The other defendants in this action have not opposed the motion. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and therefore VACATES the hearing currently scheduled for June 28, 2013. Having carefully considered the papers submitted, the Court hereby GRANTS defendant's motion, for the reasons set forth below.

**BACKGROUND**

The facts of this case are recounted in substantial detail in the Court's March 6, 2013 order granting the motion by defendants West Bay Builders, Inc. ("WBB") and Daley's Drywall ("Daley's") for determination of good faith settlement. *See* Docket No. 82 ("Order"). This case arises from the alleged slip and fall of plaintiff Thomas Mills, who was employed as a driver by plaintiff ABF Freight Systems, Inc. ("ABF"). On December 12, 2008, Mills was leaving an elevator in the Department of Homeland Security facility's loading dock while hauling a 1,800-pound pallet, and he slipped and fell on an allegedly wet surface, injuring himself.

These consolidated lawsuits followed. Defendant USA owned the facility and contracted with defendant Security Consultants Group, Inc. ("SCG") to provide security for the facility, including the loading dock area. Defendant WBB was performing construction services on the facility, and it hired defendant Daley's to perform drywall work at the facility. On November 16, 2010, plaintiff ABF filed suit against the USA under the Federal Tort Claims Act seeking $200,000 in reimbursement for past and future workers' compensation benefits paid to or on behalf of Mills as a result of the injury. On September 20, 2011, plaintiff Mills filed an action (Case No. 11-4663) under the Federal Tort Claims Act alleging negligence against the USA. The cases were consolidated, and on April 5, 2012, Mills filed an amended complaint alleging negligence against all four defendants for damages in excess of $3,000,000.

On February 5, 2013, the parties engaged in a daylong mediation session. After that session, plaintiffs agreed to settle with WBB and Daley's, which together agreed to pay $390,000. The Court determined the settlement was in good faith.

Plaintiffs and the USA continued their settlement discussions though the court-appointed mediator. Decl. of Neill T. Tseng ("Tseng Decl.") ¶ 4. On April 1, 2013, the USA agreed to settle with both plaintiffs for a total payment of $50,000. *Id.* Under the terms of the settlement agreement, the USA would pay Mills the $50,000, ABF would receive workers' compensation credit for that amount, and both plaintiffs would dismiss the USA with prejudice. *Id.*, Ex. A. Defendant SCG signed a stipulation that the settlement was in good faith, and none of the USA's co-defendants opposed this motion for determination of good faith settlement.

**LEGAL STANDARD**

Under California law, "[w]here a release, dismissal with or without prejudice or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort . . . [i]t shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors." Cal. Civ. Pro. § 877. As a check on the validity of settlement agreements that might affect joint tortfeasors not a party to the settlement, California law further requires the court to make a determination that a settlement has been

entered in good faith before that settlement can become final. *See* Cal. Civ. Pro. § 877.6. Section 877.6 allows a party to a proposed settlement to move the court for an order making such a determination.[1] *See id.* That section provides further that "[a] determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." *See* Cal. Civ. Pro. § 877.6(c).

A good faith settlement is one within "the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal. 3d 488, 499 (1985). To determine whether a proposed settlement fits that description, the court should consider: (1) a rough approximation of the settlor's proportionate liability; (2) the amount of the settlement; (3) the fact that a settlor should pay less in settlement that the amount of damages for which the settlor would be liable at trial; (4) the financial condition of the settling defendant and insurance policy limits, if any; (5) allocation of the settlement proceeds among the plaintiffs; and (6) the existence or absence of any collusion, fraud or tortious conduct aimed to injure the interests of any non-settling defendants. *Id.* at 499-500. The court assesses these factors "on the basis of the information available at the time of settlement." *Id.* at 499.

Ultimately, "a defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Torres v. Union Pacific R.R. Co.*, 157 Cal. App. 3d 499, 509 (1984). The court should approve even a contested settlement, unless there is a showing "that the settlement is so far out of the ballpark in relation to these factors to be inconsistent with the equitable objectives of the statute." *Tech-Bilt*, 38 Cal. 3d at 499-500. The burden of proving that a settlement between the parties was not made in good faith is on the non-settling tortfeasor. Cal. Civ. Pro. § 877.6(d).

---

[1] Although section 877.6 is a procedural statute, not a substantive statute, the Ninth Circuit has determined that there is no federal procedural impediment to a district court's entertaining "a motion for an early determination of the good faith question," and so such a motion can be properly brought before the court. *Federal Savings and Loan Insurance Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir. 1990).

3

**DISCUSSION**

The USA seeks a court order determining that the settlement agreement was entered by the parties in good faith and barring any present or potential joint tortfeasor from bringing any future claims against it. The Court finds that the six factors outlined by the *Tech-Bilt* court counsel in favor of approving the proposed settlement.

**1.    Rough Approximation of the Settlor's Proportionate Liability**

The USA argues that there is a significant chance that it would have been dismissed for lack of subject matter jurisdiction under the Federal Tort Claims Act (the "FTCA"). Liability under the FTCA specifically "does not include any contractor with the United States." 28 U.S.C. § 2671. Thus, the USA is not liable for the negligence of its contractors WBB or Daley's. Plaintiffs must prove that the USA was independently negligent.

There is scant evidence that the USA was the cause of Mills's slip and fall. Mills's testimony reveals that the cause of his accident was the fact that the ramp was wet. *See* Tseng Decl., Ex. E at 273:2-6. The weight of the evidence shows that one of the independent contractors caused the wet condition, not the USA. Mills had admitted that he has no evidence that would suggest that the USA made the ramp wet, or in any other way caused the fall. *See id.*, Ex. E at 279:9-11. Additionally, the evidence suggests that two SCG security guards saw the ramp about to be hosed or wet, but they failed to warn Mills. *See* Docket No. 82 at 3:26-4:2. Again, this failure to warn was committed by the USA's contractors, not the USA itself.

Finally, as the Court noted in its previous order, there are issues of comparative fault. Mills's knee injury could have made him unable to safely perform the heavy labor, and there is evidence that ABF provided an inadequate pallet jack and failed to properly train Mills.

Given these facts, the Court finds that the proposed settlement roughly approximates the USA's proportion of potential liability.

**2.    The Amount of the Settlement**

Under California law, the defendant's "good faith will not be determined by the proportion his

4

settlement bears to the damages of the claimant. For damages are often speculative, and the probability of legal liability therefore is often uncertain or remote." *Stambaugh v. Superior Court*, 62 Cal. App. 3d 231, 239 (1976). Rather, courts are to examine whether the settlement is grossly disproportionate to what a reasonable person at the time of settlement would estimate the settlor's liability to be. *City of Ground Terrace*, 192 Cal. App. 3d 1251, 1262 (1987).

As the Court detailed in its previous Order, Mills earned between $40,000 and $48,000 during his years as a truck driver for ABF, and he has not worked since the December 2008 accident, except for a two month period where he attempted modified duties. Thus it was estimated that plaintiff has lost approximately $160,000 in income; additionally, he was paid approximately $120,000 in workers' compensation for medical expenses. However, evidence that Mills had preexisting injuries could reduce the amount of special medical damages. Furthermore, the USA's orthopedic expert opined that the medical treatments three to four months after the accident were attributable to these pre-existing injuries, and not injuries caused by the accident.

Accordingly, the Court finds that the settlement is reasonable, especially given Mills's injuries and potential difficulties in attributing those injuries to the USA's negligence.

**3.      Settlor Should Pay Less in Settlement Than at Trial**

This settlement was arrived at after significant discovery, depositions, and negotiations between the parties, and after several defendants have already settled. Having expended such time and money, the settling parties now seek to avoid continued expenses and a possible expensive trial. Accordingly, the Court finds the amount of the settlement reasonable, given the fact that settling-defendants are allowed to receive a significant discount by settling, rather than proceeding to trial.

**4.      The Financial Condition of the Settling Defendant and Insurance Policy Limits**

There is no evidence that the USA would be unable to satisfy a judgment, as any amount not covered under WBB's $1,000,000 insurance policy would be paid by the United States Treasury Judgment Fund. Accordingly, this factor counsels in favor of approving the proposed settlement.

**5.     Allocation of the Settlement Proceeds Among the Plaintiffs**

The USA is paying $50,000 to Mills, and ABF will receive credit for that payment in its workers' compensation case with Mills. The Court finds that this allocation is reasonable.

**6.     Collusion, Fraud or Tortious Conduct**

*Tech-Bilt* instructs that courts are to consider the existence or absence of any collusion, fraud or tortious conduct aimed to injure the interests of any non-settling defendants. The facts presented show that the settlement here was reached through arms-length negotiations: the settlement occurred after an all day mediation session with a neutral mediator, and numerous follow-up calls facilitated by the mediator. Thus, the settlement appears to have been made in absence of collusion, fraud, or tortious conduct, and no party has made allegations to the contrary. Accordingly, this factor counsels in favor of approving the proposed settlement.

In sum, application of the *Tech-Bilt* factors demonstrates that the proposed settlement is a good faith settlement under California law. Moreover, the Court finds that the settlement is neither "grossly disproportionate" to a reasonable estimate of the USA's liability, nor is the settlement "so far out of the ballpark" to the *Tech-Bilt* factors that it is inconsistent with the objectives of section 877.

Accordingly, the Court hereby bars any present or potential joint tortfeasor from bringing any future claims against this settling defendant for equitable contribution or partial or comparative indemnity based on comparative negligence or comparative fault.

## CONCLUSION

For the foregoing reasons, and for good cause shown, the Court GRANTS defendant United States of America's motion and determines that there was a good faith settlement.

**IT IS SO ORDERED.**

Dated: June 26 , 2013

SUSAN ILLSTON
United States District Judge